(R.D. 11737)

RATTANCRAFT OF CALIF.
HARPER, ROBINSON & CO. ET AL. } *v.* UNITED STATES

(Decided March 25, 1971)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*L. Patrick Gray, III,* Assistant Attorney General (*Velta A. Melnbrencis,* trial attorney), for the defendant.

WATSON, Judge: These three appeals for reappraisement, consolidated for the purpose of trial, place in issue the appraised value of certain bamboo fencing, poles and screens exported from Taiwan during the period from December 4, 1964 to April 9, 1966. The merchandise was purchased by plaintiffs with the assistance of Kwong Hop & Co., Ltd., a firm designated on the invoices as its buying agent. The merchandise was appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. The appraisement was expressed as "Appraised At Invoice Unit Values Plus Items Marked 'X' packed." The mark "X" was used to indicate charges on the invoice designated as "Inland Freight" and "Shipping Charge."

The relevant statutory provision reads as follows:

Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

> (b)   Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the costs of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiffs claim that the correct value of the imported merchandise is that expressed on the invoices as the ex-factory price and should not include the sums designated as inland freight and shipping charges.

Plaintiffs offered in evidence the testimony of the president of Rattancraft of California and affidavits from the managers of the three manufacturers who produced the instant merchandise. Plaintiffs' president testified that he ordered merchandise and paid for it through Kwong Hop & Co., Ltd. He stated that he requested that firm to purchase the merchandise at ex-factory prices. His testimony lacked assurance with regard to specific transactions.

In their affidavits the manufacturers' managers all depose that their firms' merchandise was offered for sale to all purchasers at ex-factory prices without restrictions.

Defendant offered in evidence the testimony of Perry J. Spanos, Senior Customs Representative in Hong Kong during the period in question. He testified that the highest percentage of inland freight and shipping charges which he had come across was 5% of the purchase price in the case of bulky merchandise like bamboo fencing. A customs agent's report prepared by Mr. Spanos and dated November 22, 1967, was placed in evidence by defendant. This report is of considerable importance to the disposition of this case and it is set forth at length below:

> Reference is made to your letter dated April 18, 1967, requesting that an inquiry be conducted in Taiwan in order to obtain appropriate information concerning the exportations of bamboo slat fencing by Globe Products Co., Ltd., Taichung, Taiwan, to Rattancraft of California, Los Angeles, through Kwong Hop & Co., Ltd., Taipei, Taiwan.
>
> On November 20, 1967, Mr. H. H. Peng, manager, Kwong Hop & Co., Ltd., 291 Chang Au West Road, Taipei, Taiwan, was questioned concerning such shipments. Mr. Peng did not make any business documents available claiming that all such papers are kept at the Globe Products Factory in Taichung. Mr. Peng explained that Kwong Hop & Co. simply (1) forwards offers to Rattancraft of California on behalf of the factory (2) transmits orders received to the factory and (3) when letters of credit are received they are assigned *in toto* to Globe Products Co. Offers are quoted always in ex factory, FOB, and C & F basis; however, all sales are consumated [sic] invariably at C & F. Mr. Peng further stated that he is also a partner in the Tai Cheng Hong, Taichung, a trading firm, which in turn owns the Globe Products Co., Ltd. Tai Nok is just another name used by Globe Products Co. Mr. Peng continued that Kwong Hop acts as the exclusive selling agent of Globe Products. Upon close questioning Mr. Peng about the extremely high amounts shown as "inland charges" on the Special Customs Invoices, Mr. Peng admitted "in confidence" that such charges are always overstated. Mr. Peng explained that in the "inland charges" are included amounts of money paid as bribes to certain admeasurers and surveyors at the port of Keelung for understating (for purposes of determining the cost of ocean freight) the cubic footage of the bales containing the bamboo fencing, as well as other expenses. In order to illustrate, Mr. Peng used the following example: A bale of fencing (sold for about US $5.00) measures about 6 cubic feet. The ocean freight rate to the U.S.A. (Pacific Coast) is US $21.50 per 40 c.f. (used to be $19.00) so that the correct cost of freight should be about $3.23 per bale. However, by falsely measuring the bale to be 4 cubic feet, the ocean freight is reduced to about $2.16. The "savings" of $1.07 per bale are "split" with the admeasurers and such payments of bribes are added to the inland freight! The actual inland freight amounts to about $0.50 per bale. Mr. Peng said the main reason for selling the fencing always on C & F basis is to reduce the cost of freight since "such arrangements" cannot be made on

"freight-collect" shipments. When I asked Mr. Peng whether Mr. More of Rattancraft of California was aware of this matter, Mr. Peng replied that Mr. More "is aware of the manipulation but may not know all the details".

Plaintiffs argue that, since we are dealing with a separable appraisement they need only establish that the instant importations were freely offered for sale without the disputed charges and the presumption of correctness which remains attached to the undisputed portion establishes it as the correct export value.[1] Plaintiffs further argue that even if the inland charges contained sums representing bribes paid to obtain a reduction of ocean freight and other charges, such a course of action reinforces the view that plaintiffs' agent took possession at the factory. Finally, plaintiffs contend that the testimony of the president of Rattancraft and the affidavits of the manufacturers are sufficient to establish that the merchandise was freely offered at ex-factory prices and "under the severability rule, any charges which subsequently accrue, no matter what their nature or amount, are not part of dutiable value."

While I am in agreement with plaintiffs' basic premise that in this separable appraisement their burden of proof consists of showing that the merchandise is freely offered for sale without the disputed charges, I do not agree that the nature of the disputed charges is of no moment. When the nature of the disputed charges is itself a subject of dispute, I am of the opinion that the entire climate of the case is affected. The fact that there has evidently been a manipulation of the sums attributed to inland freight and shipping gives rise to the need for a rigorous examination of plaintiffs' proof and lessens the impact and weight of the existing proof. Thus, a quantum of proof which, in another case, might be adequate to establish that merchandise is freely sold without disputed charges is not adequate herein. The weight to be given to evidence is a matter peculiarly within the province of the trial judge and is properly influenced by the factual setting. *D. C. Andrews & Co., Inc., et al.* v. *United States*, 50 Cust. Ct. 521, A.R.D. 151 (1963). I consider the testimony together with the affidavits of the manufacturers to lack the detail and persuasiveness which the circumstances of this case demand.

It should be noted that this outcome is not the result of a rejection of a proven ex-factory price on the grounds of irregularities in separable, disputed charges. If the appraisement is separable and if it is proven that the merchandise is freely offered at the ex-factory price,

---

[1] See for example *United States* v. *Chadwick-Miller Importers, Inc., et al.,* 54 CCPA 93, C.A.D. 914 (1967) ; *United States* v. *Bud Berman Sportswear, Inc.,* 55 CCPA 28, C.A.D. 929 (1967).

the nature of the disputed charges is then unimportant. The outcome herein is the result of plaintiffs' failure to prove that the importations were freely offered for sale at a price which did not include separable, disputed charges. The dispute surrounding the nature of the separable charges is relevant insofar as it affects the weight to be given to plaintiffs' proof on the issue of ex-factory price.

Under these conditions, I find that the testimony of plaintiffs' president lacks the necessary degree of certainty and accuracy concerning the specific transactions involved herein. The affidavits lack a degree of circumstantial detail and reference to the specific importations involved.

In light of the above, I make the following findings of fact:

1. The merchandise herein consists of various bamboo articles exported from Taiwan during the period from December 4, 1964 to April 9, 1966.

2. The merchandise does not appear on the Final List (T.D. 54521) promulgated by the Secretary of the Treasury pursuant to the Customs Simplification Act of 1956.

3. The merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoiced unit values, packed plus items marked "X".

4. That plaintiffs failed to prove that the merchandise was freely offered for sale at a price which did not include the items marked "X".

I therefore make the following conclusions of law:

1. Export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determining the value of the merchandise herein.

2. Plaintiffs have failed to overcome the presumption of correctness attaching to the appraised values found by the district director.

3. The correct export values herein are the appraised values.

Judgment will be entered accordingly.